WILLIAM ASPER, Special Administrator of the Estate of A. H. RALEIGH, Deceased, Respondent, v. M. C. MOON, Appellant.

#### No. 1321. (67 Pac. 409.)

1. **Taxation: Tax Deed: Title.**
   The party setting up title by tax deed must show that all the requirements of the law have been complied with.[1]

2. **Same: Necessity of Warrant Under Laws, 1890, chapter 40, section 2030.**
   Under Session Laws 1890, chapter 40, page 53, section 2030, providing that on receipt of the duplicate corrected tax roll from the clerk of the county court, with the warrant required by Compiled Laws, section 2029, attached, the collector shall collect the taxes, etc., the collector is without authority to collect the taxes until the reception of the warrant; and a tax deed is void where it is not shown that the collector ever received the necessary warrant.

3. **Same: Notification.**
   Under Session Laws 1890, chapter 40, page 53, section 2030, providing that on receipt by the tax collector of the duplicate corrected tax roll, with warrant attached, he shall furnish each taxpayer with a notice of the amount of his tax, a notice to one of two joint owners is insufficient.

4. **Same: Joint Owners: Assessment.**
   Where property was owned jointly by W. and H., an assessment to "W. et al." was erroneous.

5. **Same: Publication: Failure to Name all Joint Owners.**
   Where property was owned by W. and H. jointly, the publication of a delinquent tax list in which the names of the owners were stated as "W. et al." was insufficient, under Session Laws 1894, chapter 75, page 125, section 2030a, requiring such publication to state the "names of the owners" of such property.

[1] Olsen v. Bagley, 10 Utah 492; 37 Pac. 739; Eastman v. Gurrey, 15 Utah 410; 49 Pac. 310.

6. **Same: Description of Property: Location.**
   A description of lots in an assessment roll and published list of de-
   linquent taxes as being in a certain addition, without naming
   the city of which this addition is a part, is fatally defective.

7. **Same: Tax Sale: Part of Assessment Illegal: Sale Void.**
   Where a lot which had been sold to a city was assessed to private
   persons as a part of a number of contiguous lots owned by them,
   and the lots owned by the private parties were sold for taxes,
   without any deduction on account of the illegal assessment, such
   sale was void.

(Decided January 28, 1902.)

Appeal from the Third District Court, Salt Lake County.—
*Hon. Ogden Hiles*, Judge.

Action to quiet the title to certain real estate which the
plaintiff alleges he owns and is in possession and entitled to
the possession thereof and that the defendant claims the same
adversely to him through a tax deed. From a judgment quiet-
ing the title in the plaintiff, the defendant appealed.

Affirmed.

*C. S. Patterson, Esq.*, and *G. W. Moyer, Esq.*, for appel-
lant.

The court erred in holding the tax deed illegal for the
reason that in the notice of sale, the property was described as
being in "Folsom's Add." and did not state whether it was in
Salt Lake City or in Salt Lake county outside the city.

In discussing the first assignment of error we call the
court's attention to the fact that it is only the notice of sale
that fails to locate the lots in question in Salt Lake City.

The assessment roll at the heading of the particular page
introduced in evidence, it is true, does not say that the prop-
erty is in Salt Lake City, but we call the attention of the

court to the testimony of J. D. Spencer in which he says "This is a city tax roll."

The notice of assessment expressly states that the property is in Salt Lake City.

The tax notice expressly states that the property in question is in Salt Lake City. Defendants exhibit two and three, describing other portions of the ground, are exactly similar in form to defendant's exhibit one, and stated that the property was located in Salt Lake City, in Folsom's Addition.

All these notices were actually received by Mr. Folsom on or about the date they bear, so that no question can be raised that Mr. Folsom actually received his notices of assessment and his tax notice, and had actual notice that the property assessed was located in Salt Lake City and not in the county outside the city.

Having this actual notice sent him on two different occasions personally by mail, and which he testifies he received, can it be that the sale which he knew must follow non-payment of his taxes can be invalidated, because the notice of sale, which is at best but constructive notice, being a publication in a newspaper, failed to state at the heading over these particular lots that Folsom's Addition was in Salt Lake City and not in the county outside the city.

Of course, had it been shown that there was a Folsom's Addition in the county, outside the city, or in some other town or city in the county, and that Mr. Folsom had been misled thereby to his injury, then there might have been some reason for special particularity of the description in the notice of sale, but this was not shown. On the contrary, it was shown that Mr. Folsom had actual notice of the assessment and of the exact location of the property, and that he knew all about it, and that he was not misled in any manner whatever.

We think, under the authorities, the assessment as it was made was amply sufficient to give notice to the owner of the tract that was intended to be assessed, and afforded him suffi-

cient means of identification, and at any rate it did not positively mislead him. If this be true, then the assessment as made was sufficient. Woodside v. Wilson, 32 Pa. St. 52; 1 Blackwell on Tax Titles, secs. 223-227; 1 Desty on Taxation, p. 567.

Blackwell goes even further and says "An assessment is void only when it wholly fails to lead to identification." Vol. 1, sec. 223.

But even were this not the general rule at the time this assessment was made, section 2024 of the Compiled Laws of Utah was in force, and it provides as follows:

"No assessment of property, or charge for taxes or assessments thereon, shall be considered illegal on account of any irregularity or informality in the tax list or assessment rolls, or on account of the assessment rolls or tax list not being made, completed or returned within the time required by law, or on account of the property having been charged or listed in the assessment or tax list in any other name than that of the rightful owner; and no error or informality in the proceedings of any of the officers intrusted with the assessment and collection of taxes, not affecting the substantial justice of the tax or assessment itself, shall vitiate or in any way affect the tax or assessment."

The court erred in holding the appellant's tax deed void for the reason that in each and all of the assessments it was assessed against "W. H. Folsom et al.," and in each of the advertisements the name of the owner was advertised in the same way, while H. P. Folsom was an owner of an undivided one-half of all the property, and was not mentioned, and did not have notice of the assessment, or of the advertisement, or of the sale.

The statute provides that the property shall be assessed to the owner if known. If the owner be unknown, then to an unknown owner. It is true that the courts have uniformly held that the assessment to an unknown owner, when the owner

was known or might have been known, had the assessor consulted the records, renders the assessment void.

It is also true that California has held that an assessment in the name of the true owner, with the addition of the words, "and unknown owner," when the person named owned the entire property in question, rendered the assessment void.

The case at bar, however, is entirely different from any of the cases decided in either of the foregoing classes. In this case the property was assessed in the name of the true owner of an undivided one-half interest, with the addition of the abbreviation "et al." to indicate that there were others owning an interest in the property.

Suppose, as might well happen, there had been a score or a hundred co-owners of the property, would it have been necessary to have named each one in the assessment roll, notice of levy, tax notice and notice of sale, in order to have rendered the sale valid? We certainly think that no such contention can be made.

We have been unable to find a case where an assessment has been declared void when the circumstances were parallel with those in the case at bar, and even should the court hold that ordinarily the omission to include the name of H. P. Folsom would be sufficient to vitiate the sale, we think that defect is amply cured by the provisions of section 2024 of the Compiled Laws of 1888.

*H. S. Tanner Esq.,* for respondent.

Appellant argues that had it been shown that there was a Folsom's Addition in the county outside the city and that Mr. Folsom had been misled to his injury, there might have been some reason for special particularity of the description in the notice of sale. The law is that the land must be described with reasonable certainty. To say that the lots were in Folsom's Add., instead of Folsom's Addition to Salt Lake City,

is unreasonable and uncertain. To assess for district and special school tax when there was no such tax, and to sell for city school tax when the assessment roll shows on its face that there was no city school tax levied, is also unreasonable and uncertain. For district and special school taxes, the lots were assessed. There being no district and special school taxes assessable, makes an excess on all of the lots of $5.25. Now a sale for more than was due renders the sale void. Eastman v. Gurrey, 15 Utah 410, 49 Pac. 310; Treadwell v. Patterson, 51 Cal. 637; Harper v. Rowe, 53 Cal. 233; Axtell v. Gerlach, 67 Cal. 483.

The Session Laws of 1890, amending section 2027 of the Compiled Laws of Utah 1888, provides:

"The collector shall furnish to each taxpayer by mail, postage prepaid, or leave at his residence or usual place of business, if known, a notice of the amount of tax issued against him," etc.

No notice was in any way given to H. P. Folsom, though it was stipulated that he owned an undivided half-interest in the premises. Be it remembered that tax sales are conducted strictly under statutory regulations which are not to be liberally construed. The prerequisites must be strictly complied with and the burden is upon the purchaser under a tax sale to show the regularity of all the proceedings. Bucknall v. Story, 36 Cal. 67-74; Marx v. Hawthorne, 148 U. S. 172.

The law in this State, so far as the regularity of the proceedings are concerned, is quoted favorably in Eastman v. Gurrey as laid down in Olsen v. Bagley. Both of these cases uphold the principle laid down in Bucknell v. Story and Marx v. Hawthorne, that the duty of the appellant as purchaser and holder of the tax deed was to show the regularity of all the proceedings. The testimony of appellant not only fails to show that the proceedings were regular and that the statute was strictly carried out, but it shows conclusively ir-

regularities which are fatal; prerequisites not complied with which wholly vitiate appellant's claim.    Olsen v. Bagley, 10 Utah 492, Eastman v. Gurrey, 15 Utah 410.

BASKIN, J.—This is an action to quiet the title to certain real estate, situated in Salt Lake City, which the plaintiff alleges he owns and is in possession and entitled to the possession thereof, and that the defendant claims the same adversely to him.    The adverse claim set up in the answer is based upon a deed of said premises executed and delivered by the tax collector of Salt Lake county to said defendant, as purchaser thereof, at a sale of the same made by said collector for the delinquent taxes of 1895.

The only question involved is the validity of the tax deed.

This court, in Olsen v. Bagley, 10 Utah 492, 495, 37 Pac. 739, 740, held that "the title to be acquired under statutes authorizing the sale of land for the non-payment of taxes is regarded as *stricti juris,* and whoever sets up a tax title must show that all the requirements of the law have been complied with."    This case is fully sustained by the numerous cases therein cited, and was expressly affirmed by this court in the case of Eastman v. Gurrey, 15 Utah 410, 49 Pac. 310. The real estate herein, at the time it was assessed and sold, belonged to W. H. and H. P. Folsom as tenants in common, each owning an undivided one-half interest, and consisted of more than fifty lots, which were described in the assessment roll as being in Folsom's Addition, but the roll failed to show whether this addition was in Salt Lake City.    The assessment of the tax was made against "W. H. Folsom et al."    Said lots were not separately assessed, but were separated into groups, each containing several lots, and as so grouped were assessed, offered for sale, and sold as the property of "W. H. Folsom et al."    As stated in appellant's brief, H. P. Folsom was not mentioned as an owner, and did not have notice of

either the assessment, the advertisement, or sale. It does, however, appear that W. H. Folsom had due notice of the taxes due in 1895, and that the same were unpaid and had become delinquent. It also appears that a publication of the delinquent list was made by the collector, but in said list, as published, the property in question was described as being in Folsom's Addition, without naming in what city that addition was located and failed to state, as required by section 2030a, p. 125, chapter, 75, Session Laws 1894, which was then in force, the names of the owners of said property. The names of the owners were stated thus: "W. H. Folsom et al." It also appears that one of the lots included had been previously sold to the city, and had been wrongfully assessed, and that, while said lot was not included in this sale to the appellant, the remaining lots were, and no part of the assessment was deducted, although the said lot had been wrongfully assessed. It does not appear that the warrant, under the hand and seal of the county court, attached to the duplicate corrected tax roll, was, as required by section 2029, Compiled Laws Utah 1888, which was then in force, delivered to the collector. Section 2030, p. 53, chapter 40, Session Laws, 1890, which was then in force, provides: "On receipt of the duplicate roll, with warrant attached, from the clerk of the county court, the collector shall proceed to collect the taxes and shall furnish to each taxpayer, or leave at his residence or usual place of business, if known, a notice of the amount of tax assessed against him, and when and where payable, and any and all taxes remaining unpaid after the thirty-first day of October of each year shall be delinquent." The warrant mentioned is set out in section 2029, Compiled Laws Utah 1888, and commands the collector "to collect from each and every person, firm, corporation or association, named in the tax roll thereunto annexed, the amount of taxes therein set forth opposite their names respectivly," etc. Until the reception of this warrant the collector is without authority to collect the tax, or

do the things required by law in collecting the same. The requirements of the statute in this respect are essential, and the appellant has failed to show that they have been complied with. This omission, and the failure to serve, as required by section 2030, before quoted, the said H. P. Folsom, with the notice therein provided for, the failure to assess the property in the names of the joint owners, and the failure to insert their full names in the list of delinquent taxes published, and to describe said property as being in Salt Lake City, vitiate, under the decisions of this court before cited, all of the tax sales and the deed to the purchaser. And as one of the lots was wrongfully assessed, and the amount of such assessment was not deducted from the amount of the assessment for which the lots classified with said lot were offered for sale and sold, the sale of said lots was void, under said decisions.

It is ordered that the judgment of the court below be affirmed, at appellant's costs.

MINER, C. J., and BARTCH J., concur.